E-FILED
Monday, 08 February, 2010 09:28:07 AM
Clerk, U.S. District Court, ILCD

EXHIBIT #1
GRAMANN REPORTING, LTD.



**Illinois State University Policies**



This Document's History

## University Policies, Procedures, and Guidelines

### 1.1.1 EQUAL OPPORTUNITY/AFFIRMATIVE ACTION POLICY

**Mission**

Illinois State University formally reiterates and reaffirms its commitment to the principles of equal opportunity, affirmative action and diversity. Discrimination based upon race, color, religion, sex, national origin, age, disability, or veteran's status is a violation of federal and state law and university policy and will not be tolerated.

Discrimination based upon sexual orientation is a violation of Illinois State University policy and will not be tolerated. This nondiscrimination policy applies to all programs administered by the University. However, this policy should not be construed to infringe upon the free exchange of ideas essential to the academic environment.

To the extent allowed by law, all employment decisions, including those affecting hiring, promotion, demotion, or transfer; recruitment; advertisement of vacancies; layoff and termination; compensation and benefits; or selection for training will be made consistent with established Illinois State University policy.

Responsibility for communicating, interpreting, and monitoring the University's equal opportunity policy has been assigned to the Office for Diversity and Affirmative Action (ODAA).

The ODAA is located on campus in 208 Hovey Hall. For additional information concerning the University's equal opportunity policy, please call (309) 438-3383.

Illinois State University assigns a high priority to the implementation of its equal opportunity policy and to maintaining an inclusive environment. The realization of this priority requires the cooperation of all members of the university community.

**Policy**

The Illinois State University is committed to providing equal opportunity and an educational and work environment for its students, faculty, and staff free from any discrimination based on race, color, religion, sex, national origin, sexual orientation,* ancestry, age, marital status, physical or mental disability,

unfavorable discharge from military, or status as a disabled veteran or veteran of the Vietnam Era.

Further, the Illinois State University is committed to a comprehensive program of Affirmative Action to insure access, equity and fairness in educational programs, related activities and employment for minorities, women, individuals with disabilities, disabled veterans and veterans of the Vietnam Era. Copies of the Affirmative Action Plan are available for inspection during regular business hours in the following offices: Academic Personnel, Diversity and Affirmative Action, Human Resources, and Milner Library. Additionally, the Plan can be inspected on the following website: www.diversity.ilstu.edu

The Office for Diversity and Affirmative Action is responsible for administering and monitoring Illinois State University's Affirmative Action Plan, Plan for Diversity and the equal opportunity/affirmative action policies and procedures. Inquiries about or complaints alleging violation of the University's equal opportunity/affirmative action policies should be directed to the Office for Diversity and Affirmative Action. The Coordinators for Title IX and the ADA/504 may be reached at the same office.

The expansion of Illinois State University's policy is within the scope of law and local ordinances. The elimination of this form of invidious discrimination is based upon local statutes and University policy and is to be resolved within existing University procedures.

**Non-Discrimination on the Basis of Disability**

The Illinois State University is committed to providing equal access to employment and educational opportunities for persons with disabilities. The Illinois State University recognizes that individuals with disabilities may need reasonable accommodations to have equally effective opportunities to participate in or benefit from university educational programs, services and activities, and to have equal employment opportunities. The Illinois State University shall adhere to all applicable federal and state laws, regulations and guidelines with respect to providing reasonable accommodations as necessary to afford equal employment opportunity and equal access to programs for qualified persons with disabilities. Questions regarding reasonable accommodations and/or discrimination on the basis of disability should be directed to the ADA/504 Coordinator in the Office of Diversity and Affirmative Action.

**Harassment Policy**

Illinois State University fosters a campus environment that recognizes individual and cultural differences and is strongly committed to the ethical and legal principle that each member of the University community enjoys academic freedom and all members of the University have a constitutional right to free speech. The right of free expression and the open exchange of ideas and views are essential, especially in a learning environment. Illinois State University vigorously upholds these freedoms. However, the value of free expression may be undermined by certain acts of harassment as defined below. Such harassment may result in the loss of self-esteem for the victim

and the deterioration of a quality classroom, social, or work environment and therefore will not be tolerated.

This policy establishes uniform guidelines and procedures for addressing all forms of harassment applicable to all students, faculty, and staff.

As members of the university community, students, faculty, administrators and staff have the responsibility to respect and not violate the rights of others and to show tolerance for opinions that differ from their own. However, nothing in this policy prohibits appropriate admonition, argument and correction by a teacher in the conduct of his/her professional responsibility in the interest of maintaining order, upholding standards, stimulating thought or promoting competence. Such action is, by definition, not a violation of this policy. Likewise, nothing in this policy precludes management's inherent authority to plan, direct and evaluate the activities of other organizational members in accordance with sound management principles and directives, including communicating, training and disciplining employees.

Harassment based upon race, color, religion, sex (including sexual harassment), national origin, age, disability, sexual orientation or veteran status is a form of discrimination in violation of the law and will not be tolerated. Retaliation against any person alleging harassment or exercising their legal right to have their allegation investigated (either internally or externally) is prohibited both by law and this policy and will not be tolerated.

All students, faculty and staff are expected to adhere to this university policy and will be held accountable for violating it. Illinois State University will respond promptly to all complaints of harassment and retaliation. Violation of this policy can result in serious disciplinary action up to and including expulsion for students or discharge for employees.

Disciplinary action for violations of this policy is the responsibility of the Illinois State University Office of Human Resources or other appropriate administrative body; for students, the responsibility lies with the Dean of Students.

**Definitions**

Harassment is uninvited and unwelcome verbal or physical conduct directed at a person because of his or her race, color, religion, sex, national origin, age, disability, sexual orientation or group affiliation that is either of the following:

**Quid Pro Quo harassment**

Consists of unwelcome conduct when:

• Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, academic advancement or receipt of a university service, and

• A tangible employment, academic or provision of services action results

from the person's failure or refusal to submit to such conduct.

## Hostile Environment harassment

Consists of unwelcome conduct when:

• Such conduct has the effect of unreasonably interfering with an individual's work or academic performance, thereby creating an intimidating, hostile or offensive working or learning environment, and

• Such conduct is so objectively and subjectively offensive as to alter the conditions of the person's employment or academic advancement [conduct that a reasonable person would find hostile or abusive and one that the Victim does in fact perceive to be so].

• Hostile environment harassment is usually repeated and unwanted behavior, although a sufficiently serious, isolated incident may constitute harassment.

• Retaliation is conduct intended as interference, coercion, restraint or reprisal upon or against a Complainant of prohibited harassment or one participating in the complaint resolution process.

• The "Complainant" is the party asserting an allegation of prohibited harassment against a specific person or persons.

• A "Respondent" is a party against whom an allegation of prohibited harassment is asserted.

Any student, faculty member, or staff employee, who believes he or she is the victim of sexual harassment, should report the incident promptly in the manner most comfortable to him or her. The Grievance Procedures list the various ways to file a complaint.

Note: Sexual harassment does not include verbal expression or written material that is relevant to course subject matter or curriculum, and this policy shall not abridge academic freedom or Illinois State University's educational mission.

**Filing a Charge**

Any student, faculty member, or employee who feels he/she has been the victim of harassment or other form of discrimination on the basis of race, religion, sex, national origin, sexual orientation, ancestry, age, marital status, physical or mental disability, unfavorable discharge from military, or status as a disabled veteran or veteran of the Vietnam Era should follow the complaint procedures outlined below. Consistent with Illinois State University's duty to provide a work and academic environment free from unlawful harassment or discrimination, the University reserves the right to investigate any allegation of harassment or discrimination upon receipt of sufficient evidence to sustain such claims.

## Formal & Informal Complaint Process

• Complainants will be asked to complete a form describing the alleged discrimination and/or harassment. Assistance will be provided, if needed.

• To be actionable, a complaint must be filed within 180 days of the most recent incident.

• The Complainant will meet with an investigator from the Office for Diversity and Affirmative Action to discuss options (informal, mediation, formal) for proceeding.

### Resolution Options:

• **Informal Resolution**. Discuss allegations and concerns with the Respondent and attempt to resolve the situation without a formal investigation. The Respondent is put on "notice." If attempts to resolve the situation are not successful, the Complainant may pursue mediation or a formal complaint.

• **Mediation**. A process that enables the parties to work toward a mutually agreed upon solution with the help of a trained, neutral mediator. If attempts to mediate are not successful, the Complainant may pursue a formal complaint.

• **Formal Resolution**. A full investigation is conducted, complete with findings.

The Office for Diversity and Affirmative Action will notify the person being charged that a complaint has been filed against him or her. ODAA will offer the charged party an opportunity to confirm or rebut the charge. If appropriate, ODAA will conduct negotiations with both parties and try to reach a mutually agreeable resolution.

• Under such circumstances wherein a violation of a policy has occurred, the Office for Diversity and Affirmative Action may issue an oral or written warning, require that the Respondent not commit such an abuse again, impose mandatory counseling on the individual who violated the policy, or take any other sanction which appropriately reflects the severity of the violation of the policy. The Respondent may appeal a sanction according to the Appeals Process described below.

• The Office for Diversity and Affirmative Action has sixty (60) working days from the date of filing the formal complaint to complete findings, if applicable. ODAA reserves the right to extend this time by a reasonable period according to the scope of an investigation or the cooperation of parties and witnesses. Complainant will be notified of this extension.

### Appeals Process

If, in the judgment of the Office for Diversity and Affirmative Action, a violation did not occur, the Complainant will be so advised and given a

verbal explanation of why the incident(s) described does not constitute discrimination on the basis of race, color, religion, sex, national origin, sexual orientation, ancestry, age, marital status, physical or mental disability, unfavorable discharge from military, or status as a disabled veteran or veteran of the Vietnam Era.

If the Complainant or Respondent wishes to appeal the Office for Diversity and Affirmative Action's finding or if the proposed resolution is unacceptable, he or she may file an appeal with the appropriate internal grievance committee (Student Code Enforcement and Review Board Grievance Committee, Civil Service/Office of Human Resources, Administrative/Professional Grievance Committee, or Faculty Ethics and Grievance Committee of the Academic Senate).

At any time prior to filing a complaint, or while a formal proceeding is in progress, a Complainant may file their charge with the appropriate external agency(ies).

**Record Keeping Requirements**

A copy of the disposition must be filed with the Office for Diversity and Affirmative Action regardless of whether the disposition results from the hearing process or informal resolution within the jurisdiction of a grievance committee.

**Transfer of Function**

If a complaint, whether informal or formal, is directed against the Office for Diversity and Affirmative Action, the functions assigned to the ODAA by these procedures will transfer to the Office of the President or to the President's designee. If a complaint, whether informal or formal, is directed against the President, the functions assigned to the ODAA by these procedures will transfer to the Illinois State University Board of Trustees.

**Right to Advisor or Legal Counsel**

The Complainant and the Respondent have the right to bring an advisor or legal counsel. If either party chooses to exercise this option, he or she shall submit the name of the advisor in writing to the Office for Diversity and Affirmative Action at least 72 hours prior to the meeting. If either the Complainant or the Respondent's advisor is a person degreed or qualified in law, the Office for Diversity and Affirmative Action must be notified.

**Right to Final Appeal**

Final appeals shall be made to the President of Illinois State University.

The President shall decide the appeal as soon as possible, but no later than 60 days of the final submission of appeal materials. The President's decision shall be in writing include an explanation, and be submitted to the Complainant, the Respondent, and the Office for Diversity and Affirmative Action. This written decision on the appeal shall constitute the final

**External
Entities for
Resolution**

**United States Department of Education**

Office of Civil Rights - Chicago District Office
███████████
Chicago, IL 60606-7204
(312) 886-8434 v (312) 353-2540 TTY

**United States Department of Justice**
Disability Rights Section
███████████
███████████ 20035-6738
(202) 307-0663 (v and TTY)

**United States Department of Labor**
Office of Federal Contract Compliance Programs (Chicago District Office)
Kluczynski Federal Building
███████████
Chicago, IL 60604
(312) 353-0335

**United States Equal Employment Opportunity Commission**
Chicago District Office
███████████
Chicago, IL 60661-2511
(312) 353-2713 v (312) 353-2421 TTY

**Illinois Department of Human Rights - Chicago**
James R. Thompson Center
███████████
Chicago, Illinois 60601
(312) 814-6200 v (312) 263-1579 TTY

**Illinois Department on Human Rights - Springfield**
███████████
Springfield, Illinois 62704
(217) 785-5100 v (217) 785-5125 TTY

**City of Normal Human Relations Commission**
███████████e
Normal, IL 61761
(309) 454-2444

**McLean County State's Attorney's Office**
███████████
Bloomington, IL 61701
(309) 888-5400

| Initiating body: | Office for Diversity and Affirmative Action |
|---|---|
| Contact: | Director of Diversity and Affirmation Action, 438-3383 |
| Formerly known as: | 1.1.1 Human Relations Statement; 1.1.2 Affirmative Action and Equal Opportunity; 1.1.3 Racial, Ethnicity, National Origin, Disability, Religious or Sexual Orientation Harassment; 1.1.4 Sexual Harassment |
| Approved on: | 08/30/2000 |
| Effective date: | |
| Revised on: | 09/01/2000 |
| Next review cycle: | 2009-2010 |
| Web Address: | http://www.policy.ilstu.edu/policydocs/eoaa.html |





ILLINOIS STATE
UNIVERSITY

**Policies Home Page**

Illinois State University home page
Copyright © 1998: Illinois State University

For questions/comments relating to this site, please contact:
policyweb@ilstu.edu

An equal opportunity/affirmative action university encouraging diversity

| Search | Drafts | Update Procedures | Archives | Glossary | Top | Policies Home Page |
|---|---|---|---|---|---|---|

# INVESTIGATIVE FINDINGS

| Complainant(s): Kristina Blankenfeld | Respondent(s): Dr. Michael Forbes |
|---|---|
| **Phone:** (419) 271-5445 | **Phone:** (309) 438-5817 |
| **Employee** ☐     **Student** ☑ | **Employee** ☑     **Student** ☐ |
| **Department/Title:** Undergraduate Music Major | **Department/Title:** Professor, School of Music |
| **Date Received:** March 9, 2005 | **Attached Documents:** Yes |
| **Protected Class:** Sexual Harassment | **Investigator(s):** Josie Evola |

## SCOPE OF INVESTIGATION

This investigation examined allegations by the Complainant that the Respondent sexually harassed her by inappropriately touching her, kissed her, and repeatedly made offensive sexually suggestive comments about her physical appearance.

## RELEVANT BACKGROUND INFORMATION

The Complainant currently has a complaint filed with the ODAA alleging the termination of her ISU sponsored internship was illegally based upon her disability. Because the complainants were filed with the ODAA simultaneously, findings of the two complaints will be consolidated.

## PRELIMINARY ACTIVITY

1. Interview Kristina Blankenfeld (Complainant)
2. Interview Dr. Michael Forbes (Respondent)
3. Interview Dr. James Major, (Witness)
4. Interview all relevant witness.



Forbes

EXHIBIT #2

8/11    wit

GRAMANN REPORTING, LTD.

## ADMINISTRATIVE USE ONLY – DO NOT DISSEMINATE

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## KRISTINA BLANKENFELD INTERVIEW

**Date of Interview**:          March 9, 2005

**Attending**:          Kristina Blankenfeld
                              Undergraduate Student , School of Music

                              Josie Evola, Director
                              Office for Diversity & Affirmative Action

On March 9, 2005 Kristina Blankenfeld (Complainant), an undergraduate music major, met with Josie Evola. She told Ms. Evola that she wanted to talk about and incident which occurred in February 2005 after the Midwest Tuba Conference. She indicated that some of the studio group (students who are studying Tuba) [reported by Blakenfeld as Matt Doherty, Clint Meyer, and Pat Moore] had an informal gathering at their house for the students and conference participants. She reported that Dr. Michael Forbes (Respondent), a Tuba professor, was also at the gathering. She stated that she had arrived at the party before Forbes, that she was out on the porch having a cigarette when he arrived at the house. She stated that he said hello to her and said, "You look good you're so skinny." She reported that every time she saw him he made comments about her appearance, usually about her weight. At one point she said, that she was coming in from the porch after having smoked a cigarette, and she encountered Dr. Forbes on his way out. Because it was crowded, they became "jammed" in a door way, she said that "you couldn't move it was so crowded." At that point, she reports that he put his arm around her, and then put his hand up her shirt and started rubbing her back and asking her about her plans for next year. Evola asked her to clarify where his hand was located on her back-again she indicated up her shirt. She reports that Forbes then leaned in and kissed her on the cheek. Evola asked her if she recalls who was in close proximity to witness this incident she reported that the other guys from the house "probably," students from another school [could not identify which school]. When asked if there were others in close contact, she said no.

She then stated that Forbes was "making me uncomfortable" [sic] sophomore year (2002). She told Evola that he was always making comments about her appearance. One day she said that he asked her if she smoked "pot." She reports that he said, "I have never gotten high, but I want to get high with you. She said that she finally decided to go to complain to Director of the School of Music, Dr. James Major in the fall semester of 2002, after an incident which occurred at party in a student's residence (Tony Hernandez, who has graduated).

She reported that she had arrived late to a recital because she had overslept. Attending recitals, she explained was a requirement of her study program. She said that she was able to play during the second half of the recital. She reported seeing Dr. Forbes at the recital and she stated that "he wasn't really mad he just said that there would be a

punishment at the party." She stated that this was a "tradition", but that was the last year of the party. [Later it was reported that this party was known as the Tuba Turkey, an initiation rite for new students]. Later that evening she attended a party at Tony Hernandez's residence. She reported Dr. Forbes was present along with, "A group of guys, I think that several have graduated-I think that only one of them may still be around." When asked who she said, "I had problems with him last semester—he forced himself on me." She would not disclose his name. [She reported that she was receiving counseling through the Student Counseling Services and had spoken with Sexual Assault Prevention Coordinator, Gail Trimpe-Morrow]. While at the party, Dr. Forbes began joking about her "punishment" for being late. She reports that at one point, his suggestion was to take off her shirt and make out with the guys in the *studio* (Tuba students). After this incident she states that she went to speak to Dr. James Major. As a result Dr. Major suggested that she contact the Office for Diversity and Affirmative. She did not at that time come to the Office to file a complaint. Blakenfeld reports that as a result of her conversation with Dr. Major, Dr. Forbes was told that he was not to have any contact with her. In addition she was placed in another professor's class so as to avoid having direct contact with Forbes.

At the end of the interview, Blakenfeld told Evola that she wanted to report the most recent incident with Forbes but that she did not at that time wish to file a *formal complaint*. Evola told her that if what she disclosed reached a threshold level of evidence indicating illegal discrimination that the Office for Diversity and Affirmative Action (ODAA) would be forced to inquire further in the matter her future level of cooperation would be up to Blakenfeld. Because by this time into the interview, Blakenfeld was visibly upset, it was agreed that Blakenfeld would contact the Office after having spoken with her counselor, to indicate her level of cooperation with the inquiry and whether or not she would file a formal complaint against Forbes. She later reported to Shane McCreery, ADA Coordinator, that she wished to go forward with a formal complaint against Forbes.

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## DR. MICHAEL FORBES INTERVIEW

**Date of Interview**:     May 16, 2005

**Attending**:              Dr. Michael Forbes
                           Professor, School of Music

                           Josie Evola, Director
                           Office for Diversity & Affirmative Action

Dr. Forbes [Respondent] is a faculty member in the School of Music (Tuba). Forbes reports that the Midwest Tuba Conference occurred February 17-19, 2005. He states that some members of the *studio* (Tuba studio students) had a "gathering" after the conference at their residence [Matt Doherty, Pat Moore, Eric Jordan, and Clint Meyer]. He said that the gathering was attended by ISU music students and students from other institutions who were attending the conference. He states that he arrived [can't remember time] and stayed for about an hour. He reports that he spent the majority of the time with his mentor Dr. John Stevens and Dr. Demondrae Thurman (member of a *quartet* in which Forbes plays).

He reports that he and the other members of his group (Thurman, Stevens) spent most of the time speaking with students who want to get feedback or information on the competition. He reports seeing Blakenfeld (Complainant) only briefly and he remembers that he saw her outside. Beyond that he did not recall having any interaction with Blakenfeld that night. He reported that he may have remarked to her that he was surprised to see her (he thought she was gone for the semester attending an internship in Seattle, WA). He cannot remember any other interaction with her that night inside and denies any inappropriate touching or any kiss.

He is surprised by the allegations and said, "Why would I want to kiss her especially after what happened in 2002." When asked to elaborate, he talked about an incident which was reported by Blakenfeld to Dr. James Major (Director School of Art) in 2002. He stated that after the recital he attended a party at which other music students were present. He said that he was surrounded by other tuba students, including Kristina Blakenfeld. He said that the other students asked her why she had been late for the recital. At one point, one of the students said maybe she should partake in the "two stein tip" [described by Forbes as a drinking game, which was part of Tuba Turkey—an initiation rite for tuba students which ended in 2002]. At about the same time that the guys in the circle where quizzing her, another student [Forbes could not remember which one] *mooned* the group. At that point, Forbes said, "We better stop this before any more nudity breaks out."

Dr. Major censured Forbes for attending the party and told him that he was not to have any further contact with Blakenfeld. Blakenfeld was taken out of his class and was transferred into Steve Parson's *studio*. [Dr. Major also told Blakenfeld that she should come to the Office for Diversity and Affirmative Action (ODAA), Blakenfeld did not file a complaint with ODAA in 2002).

⊙ ⊙ ⊙ ⊙ ⊙

He stated that prior to the 2002 party, he taught Blakenfeld in the tuba studio. He gave some background, stating that he had more strict guidelines for success in his studio than his predecessor (for example, you can miss no more than one lesson in his studio). He said that it became apparent early on that Blakenfeld was struggling. Particularly, she would not come to lessons prepared and would not attend required programs (such as the recital) in a prescribed manner. He indicated that other students also struggled with the changes and that the studio experienced a transition phase which was difficult for other students including Tabitha Boorsma and Tony Hernandez. He wonders about the timing of the complaint (end of school year).

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## DR. JAMES MAJOR INTERVIEW

**Date of Interview**:     May 2, 2005

**Attending**:     Dr. James Major
Director, School of Music

Josie Evola, Director
Office for Diversity & Affirmative Action

Dr. James Major is the Director of the School of Music. He stated that she had come to him and stated that Dr. Forbes was at a party at which he told her that as a form of punishment for being late to a recital she would should take her shirt and make out with the guys (studio students). Dr. Major shared with the Office for Diversity and Affirmative Action (ODAA) correspondence with Kristina Blakenfeld [Complainant] in 2002. In an email dated November 7, 2002 he writes, "I encourage you to communicate with the Office for Diversity and Affirmative Action . . . It is an impartial office, intended to deal with these situations."

In response to her allegations, he talked to Forbes and admonished him, questioning the wisdom of attending the party and engaging in such an informal situation. In addition, in an effort to address her concerns, he removed Blakenfeld from Forbe's studio and transferred her to Steve Parson. Major indicates that the next year, she wanted to be placed in Forbes studio again. [Mona Raines, School of Music administrative assistant, confirmed that Blakenfeld told her that she "wanted to be put back into Mike Forbes studio in the Fall of 2004.]

00022

## TABITHA BOORSMA INTERVIEW

**Date of Interview**:    May 25, 2005

**Attending**:    Tabitha Boorsma
Undergraduate Student , School of Music

Josie Evola, Director
Office for Diversity & Affirmative Action

On May 25, 2005 Tabitha Boorsma was interviewed by Josie Evola, Acting Director of the Office for Diversity and Affirmative Action. Evola had attempted several times to contact Boorsma. Each time a message was left that Boorsma had suggested contacting her. On May 25, 2005 Boorsma was interviewed. She reported that she did attend the party with Kristina Blakenfeld after the Midwest Tuba Conference in February. She states that Dr. Michael Forbes (Respondent) was already at the house when they arrived. She described the house in the following manner: the front porch led to the front door-as you come in to the right there was a staircase, to the left was the living room-dining room area and adjacent to that was the kitchen. Off the kitchen was an enclosed area which led to another porch. She reported seeing Dr. Forbes the majority of the time around his "Quartet, the other guys who play with him." [Nat McIntosh, Demondrae Thurman, and although she identified Dr. John Stevens as a "quartet" member he was later referred to by Thurman and Forbes as a Professor and mentor.] She reported also seeing students talking with Forbes and the other *quartet* members [Pat Moore, Eric Jordan, and Meredith Melvin]. She stated that she remembered Dr. Forbes remained mostly next to the "keg"-by the living room-dining room area. She also reported seeing him for a shorter period of time by the "enclosed area." She reported that she drank "one six pack of ½ bottles of beer." She did not remember Kristina drinking that evening. She did see Dr. Forbes drinking a beer "from the keg" but she did not report that he was intoxicated. She states that in the early morning hours, she believes it may have been 2:00 AM, Kristina went up to Boorsma and told her "Dr. Forbes came up to me and was kissing me."
I asked her if she gave any more details, such as where he had kissed her. Boorsma replied, "On the lips." When asked for clarification and whether or not Blakenfeld had specifically stated on the lips, she admitted that no, Kristina had not explicitly said that but that Boorsma had inferred it by Kristina's reaction, "She was really upset." Boorsma reports that she got mad, "I went outside to yell at him, but he was gone." She reports that at the time they left the party had thinned out and was not as crowded. Boorsma stated that at no time did she see Forbes kiss or otherwise touch Blakenfeld.

Boorsma repeated the allegations made by Blakenfeld regarding Forbes behavior at a party after a recital in 2002. [Blakenfeld reported that Forbes told her that as a punishment for being late to recital she would have to take off her shirt and make out with one of guys] Boorsma clarified that she was not present and only had heard Blakenfeld's account of that night. She stated that Blankenfeld stopped attending recitals "because of Forbes." [Later, investigator spoke with an

administrative assistant, Mona Rains, in School of Art that reported that Blakenfeld, had come in to the office Fall of 2004, requesting to be placed back into Dr. Forbes *studio*.]

Boorsma reported that she did see Forbes act inappropriately toward another student, Meredith Melvin. She reports to have seen Melvin talking to the *quartet,* including Forbes. She asked for "something" to which Forbes responded, "He will give it to you if you make out with one of the *quartet* members." Melvin denies this ever occurring and stated that at no time did any of the *quartet* members act inappropriately. Furthermore, she states that she has a very good relationship with Forbes and the other [tuba] *studio* students.

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## NAT MCINTOSH INTERVIEW

**Date of Interview**:    May 25, 2005

**Attending**:    Nat McIntosh
Witness

Josie Evola, Director
Office for Diversity & Affirmative Action

Nat McIntosh is a member of Forbes musical *quartet* and a freelance artist. He reports that he did attend the private gathering held after the Midwest Tuba Conference. He states that he arrived with the other "quartet" members including Dr. Forbes. He reports that they arrived "late" around 11:00 PM and stayed about an hour. He states that it was very crowded and that it was still crowded when they [including Forbes] left. He reports that Forbes and the *quartet* members "mostly stayed together" along with John Stevens [Forbe's mentor]. He reports that they spent the majority of their time in the living room close to the beer keg. He reported that students did come up to speak to McIntosh and his other *quartet* members about the conference and other music related matters. He did not see Forbes kiss or inappropriately touch any student. He states that they were all within "eyeshot."

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## DR. JOHN STEVENS INTERVIEW

**Date of Interview**:    May 25, 2005

**Attending**:    Dr. John Stevens
Witness

Josie Evola, Director
Office for Diversity & Affirmative Action

Dr. John Stevens is a Professor of Tuba/Euphonium at the University of Wisconsin. He was Dr. Forbes professor and mentor. Dr. Stevens indicates that he arrived at the party with Dr. Forbes and was in close proximity to Forbes all night. He states that the house was small and very crowded. He reports that he did not see Forbes engage in any behavior which gave him concern. When asked whether he saw Forbes kiss any students on the cheek he said, "No." Stevens said that while he and Forbes spoke to many students, answering their questions about the competition and generally networking, he did not see Forbes engage in any physical contact with a student that evening.

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## MATT DOHERTY INTERVIEW

**Date of Interview:**     May 18, 2005

**Attending:**     Matt Doherty
                   Witness

                   Josie Evola, Director
                   Office for Diversity & Affirmative Action

Matt Doherty resided in the home which hosted the party after the Midwest Tuba Conference. He states that he saw Dr. Forbes arrive with *quartet* and John Stevens.   He said he first noticed Forbes who was with McIntosh in the main room [living room-dining room].  He stated that Forbes was with at least one other member of the *quartet* at all times.  He reported that many of the students wanted to talk to group to get advice on their music and careers. "They [*Forbe's group*] were progressively trying to leave. They were in the kitchen for awhile, the next thing I know they were gone." Doherty reports that the party was crowded and that he spent the majority of the time *circulating* "trying to keep it to a dull roar."

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## FINDINGS

In February 2005, the Complainant and the Respondent were present at an off campus "after party" for the Midwest Tuba Conference. Although the Complainant alleged that at this party the Respondent engaged her in conversation, "kissed her cheek", and placed his hand up her skirt, the ODAA investigation yielded no evidence to support these allegations took place.

The Complainant's specific allegations are:

- The Respondent made inappropriate and unwelcome physical contact of a sexually nature with the Complainant at an off campus party.

  FINDING – The investigation yielded no evidence to suggest the Respondent engaged in any behavior with the Complainant that would be deemed inappropriate, unwelcome, or sexually harassing. Although both the Complainant and the Respondent were present at the Midwest Tuba Conference after party, no evidence exists to corroborate the Complainant's allegations. Moreover, witnesses at the party stated they did not recall the Respondent even speaking with or acknowledging the Complainant.

- The Respondent made numerous inappropriate and sexually charged comments to the Complainant regarding her physical appearance and his desire to "get high with" the Complainant.

  FINDING – No evidence exists to support any claim by the Complainant that the Respondent made comments that could reasonably be perceived as inappropriate, sexually charged, or sexually suggestive.

## CONCLUSION

No evidence was found to substantiate the Complainant's allegations that the Respondent made inappropriate, unwelcome, and sexually suggestive physical contact with the her. Specifically, there is no basis in the Complainant's allegations that the Respondent kissed her, placed his hand up her skirt, or had sexual contact of any kind. Additionally, no evidence was found to support the Complainant's statements that the Respondent made sexually suggestive and/or inappropriate comments regarding the Complainant's physical appearance.

# RECOMMENDATION

It is the understanding of the ODAA that the Complainant intends, if not already has, withdrawn from Illinois State University and will not be returning for the 2005-2006 academic year.

There are no recommendations by the ODAA as all allegations by the Complainant were found to be unsubstantiated.

OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

# INVESTIGATIVE FINDINGS

| Complainant(s): Annika Torkelson | Respondent(s): Dr. Michael Forbes |
|---|---|
| Phone: (507) 933-8717 | Phone: (309) 438-5817 |
| Employee ☐     Student ☑ | Employee ☑     Student ☐ |
| Department/Title: Undergraduate Gustavus Adolphus College | Department/Title: Tuba Instructor, School of Music |
| Date Received: December 7, 2005 | Attached Documents: Yes |
| Protected Class: N/A - Sexual Harassment | Investigator(s): Shane McCreery |

## SCOPE OF INVESTIGATION

This investigation examined allegations of sexual harassment by Dr. Michael Forbes (Respondent) against Annika Torkelson (Complainant), an undergraduate student at Gustavus Adolphus College (GAC) in St. Peter, Minnesota. The incident is alleged to have occurred April 23, 2005 on the campus of GAC while the Respondent, a member of the ISU Faculty Brass Quintet, was participating in a "Tubonium" on the GAC campus.

## RELEVANT BACKGROUND INFORMATION

This issue was brought to the attention of the Office for Diversity and Affirmative Action (ODAA) when St. Peter Police Investigative Sergeant Jerold Yushta contacted Illinois State University Police Captain Keith Gehrand on September 26, 2005. The ISU Police then forwarded the complaint to the Provost's Office who then forwarded it to ODAA for investigation.

Because the Complainant's statements to Officer Yushta were made under oath/penalty of law, ODAA accepted the Complainant's statements as her official testimony in the investigation. The Complainant was advised that should she desire ODAA to conduct a formal investigation, a completed copy of the ODAA complaint form was a necessary step in order for ODAA to precede. On December 7, 2005 the Complainant returned a completed ODAA complaint form with a typed affidavit providing her recollection of the events.

## PRELIMINARY ACTIVITY

1. Interview Michael Forbes (Respondent)



Forbes
EXHIBIT #3
9/11    W4
GRAMANN REPORTING, LTD.

**ADMINISTRATIVE USE ONLY – DO NOT DISSEMINATE**

II

| Post-it® Fax Note | 7671 | Date 12-15-05 | # of pages ▶ 7 |
|---|---|---|---|
| To SHANE McCREERY | | From HANK TOUAIN | |
| Co./Dept. ISU | | Co. GAC | |
| Phone # | | Phone # | |
| Fax # 309-435-7395 | | Fax # 507-933-6526 | |

# Illinois State University
## Office for Diversity & Affirmative Action
## ODAA Complaint Form

## CONTACT INFORMATION

Annika Torkelson
Name    (Please Print)

██████████████████ ████
Address

████████ MN  56081              (507) 933-8717
State/ZIP Code                          Telephone Number

atorkelss@gac.edu               (507) 381-6899
Email                                  Alternate Telephone Number

## TYPE OF ALLEGED DISCRIMINATION (check all that apply)

☐ Race                    ☒ Sexual Harassment          ☐ Veterans' Status
☐ Color                   ☐ Sexual Orientation         ☐ Unfavorable Military
☐ Religion                ☐ National Origin               Discharge
☐ Disability (ADA)        ☐ Age
☐ Gender                  ☐ Marital Status

☒ Retaliation
*For the purposes of this process, retaliation is defined as retaliatory conduct
against an individual who has opposed that which he/she believes to be unlawful
discrimination, sexual harassment in employment/education or because he/she has made a
charge, filed a complaint, testified, assisted or otherwise participated in an investigation,
proceeding or hearing concerning an unlawful employment practice.*

REFERRED BY: _____

## DETAILS OF THE COMPLAINT

Date(s) the alleged violation(s) occurred: _4/23/2005_

Witness (es) (if any):

Witness #1

Witness #2

Witness #3

**Person(s) who allegedly engaged in the discriminatory activity**

_Dr. Micheal Forbes_                          _Music_
Name                                          Department


Name                                          Department

## DESCRIPTION OF COMPLAINT (attach additional sheet if necessary)

_Refer to police report, and personal statement_

Updated 7/2005

## DESIRED ACTION TO BE TAKEN

I would like to see that Dr. Forbes be punished for his wrong-doings.
For the safety of the campus community and other people he will have
contact with  the public should be notified of his unacceptable
behavior.

I, the undersigned, do hereby authorize the Office for Diversity & Affirmative Action (ODAA)
or other designated Illinois State University officials to conduct inquiries or investigation
procedures as needed with respect to the investigation/resolution of this complaint. I understand
that information regarding my complaint may be shared with applicable University officials in
order to acquire sufficient information with respect to the investigation as well as any follow-up
activities that may be required in relation to the University's response to my complaint. I also
authorize the University to use whatever information may be obtained with respect to this
complaint in any legal or formal grievance proceedings that may involve the issues contained
herein. I affirm that I have read the above complaint and that it is true to the best of my
knowledge, information, and belief.

| ████████ | 12/12/05 | | |
|---|---|---|---|
| Signature | Date | ODAA Official or Designee | Date |

*Illinois State University takes pride in maintaining a tradition of equitable treatment among all members
of its community by promoting a respectful, non-discriminatory environment for learning, working, and
living. With this understanding, the University is exceptionally committed to providing equal opportunity
for its students, faculty, and staff through prohibition of any discrimination based upon an individual's
race, color, religion, gender, national origin, sexual orientation\*, ancestry, age, marital status, physical
or mental disability, unfavorable military discharge, or status as a disabled veteran or veteran of the
Vietnam Era.*

April 23, 2005 – Tubonium 2005

Offender: Micheal Forbes – Professor of Music at Illinois State University


It started out by him asking me where a good place in town to eat was. Of course I told

him the cafeteria was a great place to eat. I sensed he was sort of flirting with me

because he said it must not be that good because I'm so slim. I just laughed it off and

told him I've only been here a year. I wasn't done with my shift at the registration table

yet but he asked if I could take him to the cafeteria. Since I hadn't eaten yet I figured it

would be a good deal to have lunch with a music professor to discuss a career in the

music industry. Well on the walk over to the cafeteria he rubbed my back and it wasn't a

calm pat. Later, still on the way to the cafeteria, he grabbed my shoulder and pulled me

toward him and kissed my ear. Then he tried to kiss me again and I pulled away saying

no. I then asked him how his wife and 5-month year old are doing. He looked surprised

because he didn't know that I knew. I only knew because I had eves dropped in on one

of his conversations in the music building after he had asked me to go to lunch with him.

So we went to lunch and chatted about music and his career. And he was asking me

personal questions like if I had a boyfriend and how that was going. I realize I should

have lied and not told him that I'm single. Then my mother came to drop off my things

from home. I had to go out the van to get my stuff and my mother was concerned about

the professor being so kind to me. I told her that I had things under control and that he

was just a nice man. I felt like I had enough self-confidence that if anything were to

happen I could tell him no and get out of the situation. But later after the fact I now

know that at that moment I could have easily just left and not gone back to him in the

cafeteria. But I went back to him and he asked me where I was going to go after lunch. I told him (regretfully) that I had to go back to my dorm to take my stuff up there and then back to the music building. He asked me if he could come up with me. He said he would help me carry my stuff. And at first I'm like no, he would probably try something and we'd be all alone. But he kept pushing it on me for quite awhile and I kept saying that I wouldn't let us get into that situation because he's married but, finally I'm like fine, just to get my stuff up there and then we leave. I knew that he was going to try and kiss me again but I figured I could handle that and that would be it. So when we got up to my room as I was organizing my things I was bending over my backpack and he started giving me a backrub. I just ignored him. Then when I stood up he caught my shoulders and made out with me. He kept saying how beautiful I was and then he pulled my hand down to his penis and forced me to rub it. I then stepped back and told him I couldn't do this. So I stepped out of the room. When I came back he was laying on my futon and as I was packing up some more of my things he pointed to his penis and he's like, "you know, this is really going to hurt later." And I'm like, yeah, so? He said, well can I come in here? I said, well can't you just do it in the bathroom? He said, no. So I'm like fine just do it here. He asked me to sit down but I didn't watch it like he wanted me to. And he even said, "You're not watching it!" So I stood up so I wouldn't have to watch it. I stood next to him and he tried kissing me again but I didn't let him and he even tried to grab my hand to help him on but I said no. I got Kleenexes for him to come in and I turned my back when he actually had his orgasm.

Then he got his pants back on and we headed back to the music building. On the way there he asked me how I was feeling and I said fine. And he was like don't you need to

get off too? And laughing, "or are you just going to do it later?" I'm like, "No, I feel fine." After we got out of my dorm room I hadn't said much to him, and he said I was acting all cold and now he felt bad for what he did. And I'm like, well what do you expect? Then he made me promise that I wouldn't tell a soul. So, I promised just to make him happy and he also promised that he wouldn't tell anyone either.

About 5 1/2 hours later (after the final recital of the conference) as I was waiting to talk to a performer, Forbes found me and started chatting with me again. He kept saying how nice it was to have met me and noticed that I had changed (which I did, to something not as flattering as my dress slacks and coat, which I had on before) and that I had a retainer in. There were other college students around me (tuba and euphonium players from Eau Claire U.) and I think they picked up on the fact that Forbes was flirting with me because one of them smiled and shook his head saying, "No, Mike". Then he finally left.

Initially, I hadn't thought it was a huge deal until I told a close friend about it and she told me it was sexual assault, because he had done things against my will. I'm not massively irate about his actions, I just don't want him to think that he can just do something small like this and just get away with it every tour he goes on. One of his excuses after the dorm episode when he was trying to get me to promise not to tell anyone was that it doesn't matter because we didn't really do anything (like we didn't have sex) and I'll probably never see him again. As he said those things I was thinking yeah right, that's what you think, something like this doesn't just deal with surface emotions – it goes deeper than that.

I do realize that there were a million and one things I could have done differently to push him away before we actually got up to my dorm. Overall, before he first kissed me on my ear I was trying to professional and thought he looked very professional also.

00038

**Date of Interviews**:     November 7, 2005
                            December 12, 2005

**Attending**:             Dr. Michael Forbes (Respondent)
                           Assistant Professor, School of Music

                           Shane McCreery
                           Acting Director

Dr. Michael Forbes (Respondent) is a Caucasian male Assistant Professor of Tub and Euphonium in the School of Music and is a member of the University Faculty Brass Quintet. On April 23, 2005, the Respondent was visiting the campus of Gustavus Adolphus College (GAC) to perform as a member of the ISU Faculty Brass Quintet. The Respondent admits to having met the Complainant while the Complainant worked at the performance registration desk.

According to the Respondent, he asked the Complainant where he might find something to eat. The Respondent stated that the Complainant said GAC had a cafeteria near by and that she (Complainant) had "points" on her student ID card she could use and offered to join him for lunch. During lunch, the Respondent stated he and the Complainant discussed the GAC and ISU music programs as well as the possibility that the Complainant might wish to transfer to ISU should she be able to find a music scholarship. The Respondent also stated that during their lunch conversation he and the Complainant discussed a number of personal issues including the fact that the Respondent was married and a child, and that the Complainant was single.

After lunch concluded, the Respondent stated that the Complainant told him that she had returned from a weekend home earlier that morning and was going to need to excuse herself to carry some personal items up to her dorm room. The Respondent said that he offered the Complainant help in carrying the items to her room and with her consent accompanied her to her car and followed her to her dorm room. The Respondent stated that once inside the dorm room, the Complainant approached him and kissed him on the lips and grabbed his genitals. The Respondent said that he did not "kiss her back" which caused the Complainant to become "embarrassed" and "awkward". The Respondent said that he could tell the Complainant felt "rejected" and ran out of the room to the bathroom. The Respondent said that the Complainant returned to the dorm room minutes later. The Respondent said that he tried to reassure the Complainant that "everything was ok" and there was "no reason to be embarrassed" yet the Complainant remained withdrawn.

The Respondent said he had no success in making the Complainant feel comfortable so he returned to the concert. The Respondent said that later that evening he saw the Complainant and tried to speak with her by inviting her to sit with him at the concert.

The Respondent stated the offer was rejected by the Complainant who then left the concert to "go to a bar" with a fellow GAC student.

When questioned as to why he did not he did not inform any of his colleagues or the Director of the School of Music of the incident, especially after being contacted by the St. Peter, Minnesota Police Department the Respondent replied that he feared the incident would be investigated by ODAA because of the recent sexual harassment charge filed against him by ISU student Kristina Blankenfeld.

When asked what his thoughts were as to why the Complainant would direct a complaint, especially one with such detail, to the St. Peters Police Department, the Respondent stated that he assumed that the Complainant had become a Religion major and was feeling guilty for what she had done or simply had a "colorful imagination".



September 26, 2005

Illinois State University Police
Captain Keith Gehrand
██ ██
Normal, IL 61790-9240

**CONFIDENTIAL**

Re: Michael Forbes

Dear Captain Gehrand,

You may recall a short telephone conversation we had on August 29, 2005 regarding Mike Forbes, a staff member at Illinois State University (ISU).

On April 23rd, 2005, Gustavus Adolphus College (GAC) in Saint Peter, MN presented a program called a Tubonium which included many visiting members of various college staff. This included Michael Forbes, Assistant Professor of Tuba and Euphonium at ISU as well as the ISU Faculty Brass Quintet.

Following this event, Annika Torkelson, a nineteen year old female student from GAC, alleged that she had a sexual encounter with Mr. Forbes while he was visiting. Her allegation indicates she felt pressured into performing some sexual acts with Mr. Forbes in her dormitory bedroom.

Ms. Torkelson has decided against pursuing criminal charges against Mr. Forbes, however, she felt some knowledge of this event should be passed along to the staff at ISU to prevent a repetition of this type of event.

I spoke with Mr. Forbes by telephone. In a limited discussion, Mr. Forbes indicated some type of event occurred with Ms. Torkelson but it was he that was "on the spot". He stated everything that happened was consensual but he didn't think "anything remotely sexual actually occurred".

As I indicated in my telephone conversation with you, faculty at GAC are aware of the allegation and desire this incident be brought to the attention of ISU law enforcement and faculty. If you have any questions or comments, please contact me at your convenience.

Sincerely,

██ ██

Jerold W. Yushta
Investigative Sergeant

Cc/file
Enc: File copy SPPD 05002512

# SAINT PETER POLICE DEPARTMENT

St. Peter, MN 56082

Ph: 507 931-1550    Fax: 507 934-1699

| OFFENSE | | | | | ICR # |
|---|---|---|---|---|---|
| 5th Degree Criminal Sexual Conduct | ☒ Adult | ☐ Juvenile | | | 05-002512 |

| DATE RCVD | TIME RCVD | DATE OCCUR | TIME OCCUR | MSS |
|---|---|---|---|---|
| 05-05-2005 | 1430 hours | 04-23-2005 | 1515 hrs | 609.3451 |

| LOCATION OF OFFENSE (Address) | City | State | Zip |
|---|---|---|---|
| N███████ ████ | St. Peter | MN | 56082 |

## CODES: ARR - BUS – CNF – COM – JV – SUS – VIC - WIT

| Code | Full Name | DOB | Race | Hgt. | Wgt. | Hair | Eyes |
|---|---|---|---|---|---|---|---|
| COM | ANNIKA MARIE TORKELSON | See Supp | W | 508 | 125 | BRO | BRO |
| Sex | Local Address | Home Ph #: | | Driver License #: | | | |
| F | See Supplemental | See Supp | | | | | |
| Code | Full Name | DOB | Race | Hgt. | Wgt. | Hair | Eyes |
| | | | | | | | |
| Sex | Local Address | Home Ph #: | | Driver License #: | | | |
| | | | | | | | |
| Code | Full Name | DOB | Race | Hgt. | Wgt. | Hair | Eyes |
| | | | | | | | |
| Sex | Local Address | Home Ph #: | | Driver License #: | | | |
| | | | | | | | |

## VEHICLE INFORMATION

| Year | Make | Model | Style | Color | Lic # | State | Yr. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## PROPERTY INFORMATION

| Qty. | Serial # | Make, Model, Description | Value |
|---|---|---|---|
| | | | |
| | | | |

## SYNOPSIS

On 05-05-2005, at 1430 hours, Ms. TORKELSON reported an incident that occurred on 04-23-2005 at Gustavus Adolphus College in her dormitory room. She indicated a visiting professor from Illinois had engaged in sexual contact with her against her will. See supplemental report for details.

**CONFIDENTIAL**

| REPORTS | | |
|---|---|---|
| ☐ Supplement(s) | ☐ Evidence-Property | ☐ Criminal History |
| ☐ Citation | ☐ Statements | ☐ Arrest Photos |
| ☐ Photographs | ☐ Tow Report | ☐ Fingerprints |

| DISPOSITION | |
|---|---|
| ☐ Cleared By Arrest | ☐ Inactive |
| ☐ Exceptionally Cleared | ☐ Unfounded |
| ☐ Refer Other Agency | ☐ Other |

Officer Signature: ██████████    Badge #: ____1913____

| NAME OF COMPLAINANT | **CONFIDENTIAL** | CASE NO. |
|---|---|---|
| TORKELSON, ANNIKA MARIE | | 05-002512 |

| OFFENSE | OFFICER /PAGE # |
|---|---|
| 5th Degree Criminal Sexual Conduct | Sgt. Yushta Page 2 |

*DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.,*
*(Investigating Officer must sign)*

DATE: 05-05-2005

On 05-05-2005, at 1430 hours, I met with Ms. TORKELSON in my office with the Gustavus Adolphus College (GAC) Dean of Students, HANK TOUTAIN. I outlined the method I used in investigating criminal complaints with Ms. TORKELSON. At 1641 hours, I began a taped statement from her.

Ms. TORKELSON stated she wanted Mr. TOUTAIN present as support during her statement.

Ms. TORKELSON stated that on 04-23-2005 at the Tubonium Festival at GAC. She was at the registration table for the Festival near the south entrance to Bjorling Recital Hall. She was with another girl named AMY JANSEN, a junior at GAC. They were taking the registrations.

She overheard a conversation between two people near the table. One of the people, a male adult, was telling the other person that he and his wife had a five-month-old child.

At approximately 1400 hours, the male that had talked about having a wife and child walked up to her at the registration table. He introduced himself as Dr. MICHAEL FORBES and asked where there was a good place to eat in town. She mentioned the GAC cafeteria. He asked if she had eaten lunch. She told him that she had not eaten yet and he asked if he could take her to lunch.

She knew he was a visiting professor because she saw his name in the program for the Festival.

Ms. TORKELSON thought it would be a good idea to go to lunch with him because she was interested in being a music education major so it would be a good opportunity to speak with another music professor and get his insight in music and teaching experience.

Ms. TORKELSON's shift at the registration table was over so she walked with him over to the Cafeteria. As they walked out of Bjorling Hall, he rubbed her back slightly below her shoulder blades with his hand in a harsh manner. They arrived at the Cafeteria at approximately 1415 hours.

Just outside the Cafeteria, by the east door, he was on her left side, he grabbed her shoulder with his right hand, pulled her over and kissed her in the center of her left ear.

He tried to kiss her again and she told him not to do that because he was married. They went in and got food. They sat at a table and talked about music and school. She asked questions about his life and career experience that related to her desire to have knowledge about her career choice. Dr. FORBES mostly stayed on task. He did mention that his relationship with his wife was not going very well lately. He stated he thinks she is cheating on him. He stated he was not getting much sleep with his new daughter.

Dr. FORBES then asked her questions about whether she had a boyfriend. She responded that she was "single". He asked her where she was going after

| NAME OF COMPLAINANT | **CONFIDENTIAL** | CASE NO. |
|---|---|---|
| TORKELSON, ANNIKA MARIE | | 05-002512 |

| OFFENSE | OFFICER/PAGE # |
|---|---|
| 5ᵗʰ Degree Criminal Sexual Conduct | Sgt. Yushta Page 3 |

*DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.,*
*(Investigating Officer must sign)*

DATE: 05-05-2005

lunch. She had just come from home the day before and had a lot of stuff with her that needed to go to her dorm room. She told him she was going to her dorm room. He offered to help carry her stuff.

Ms. TORKELSON told him "no" because she figured he would try to do something because they would be alone in her dorm. He asked a lot of times to help her. She gave in figuring they would only be up there a little while. This was at approximately 1500 hours. They walked directly to Norelius 4H, which holds about twenty-four students. The conversation was casual without sexual or troubling comments. Her room is 402, directly inside the section on the right side. Her room has a lockable door and she is the sole occupant.

She unlocked her door and put her backpack on her futon. She does not believe anyone saw them enter his room. She started taking stuff out so she could go back to Bjorling Hall. As she was unpacking, Dr. FORBES stood behind her and began to give her a back rub with both of his hands. She did not want to deal with him so she stood up and turned around. He caught her by the shoulders with both hands and began to make out (kiss) her. She did not tell him no or physically try to stop him. She went along with it for a little while to get it over with and please him because she thought that all he wanted to do was to kiss her. The kissing lasted about one minute and Dr. FORBES was using his tongue. He had his hands on her waist at that point.

Dr. FORBES grabbed her hand and pulled it down to his penis and made her rub his penis on the outside of his clothing. After about five seconds, she told him "I can't do this" so she left the room. She went to the bathroom and locked the door for about one minute to get her bearings.

She went back into the room and Dr. FORBES was lying on her futon. She began to finish putting her stuff together. He pointed to his penis and said, "This is going to hurt later". She said "Yeah, so"? He said, "Can I come in here". She said "No, can't you do it in the bathroom"? He said "No I have to do it in here". I said, "Fine, just do it".

He asked me to sit down on her futon while he stood up and dropped his pants and boxer shorts (which had fish on them). He began to "jerk off" and he wanted her to look at his penis. He "half" yelled at her because she was not looking. She told him she couldn't because she didn't want to. She stood up next to him so she wouldn't have to look at it. He tried to kiss her again and she told him "No". He had his hand around her waist. He removed that hand and tried to grab her hand to have her help him come but she did not let him and told him "No". He actually got a hold of her hand but she pulled away. He was also feeling her butt while masturbating. He asked her what he should come in. She got Kleenex for him. He laid down on

| NAME OF COMPLAINANT | CONFIDENTIAL | CASE NO. |
|---|---|---|
| TORKELSON, ANNIKA MARIE | | 05-002512 |

| OFFENSE | OFFICER / PAGE # |
|---|---|
| 5ᵀᴴ Degree Criminal Sexual Conduct | Sgt. Yushta Page 4 |

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.,
(Investigating Officer must sign)

DATE: 05-05-2005

the futon and finished coming. She indicated that virtually all conversation had ended.

After he ejaculated, he threw away the Kleenex, put his pants back on, she finished getting her stuff taken care of and they walked back to Bjorling Hall. Once they got back to Bjorling Hall, they went separate ways.

At supper that evening, she spoke with BARBARA GUY who lives in Noreluis. She also told RICH AUDY, an Admissions Counselor, and Dr. WARREN FREEDMAN, the Orchestra Director on Sunday evening.

Ms. TORKELSON stated she saw him after the 2130 ending of the recital and he made comments about noticing her dress. He flirted with her a little bit. She stated there were other people there from another school and they told him, "Mike, no!" They were college students from Eau Claire and there were three guys and one girl.

She described Dr. FORBES as being a white male about 5-6, stocky, goatee, dark brown hair. He told her he was thirty years old. He was wearing a black sports coat, black dress slacks. She stated his penis was circumcised. She did not notice any scars or tattoos.

I ended the interview at 1512 hours. I told Ms. TORKELSON that I would need a few days to prepare a report and to consider the options available. I asked her if she would be able to participate in a surreptitious telephone call to Dr. FORBES. She did not feel comfortable with that idea.

On 05-13-2005, at 1355 hours, I met with Ms. TORKELSON in the Interview Room. I explained to her that I would pursue the case by either doing a surreptitious telephone call, interview Mr. FORBES by telephone, or try to get someone from Illinois to do an interview. She indicated she would think on this for the weekend and then call me.

I asked her if she had visited with her mother on the date of the offense. She stated her mother had walked into the cafeteria as she was eating with Mr. FORBES. Her mother told her that she had brought three bags of clothes that were in her vehicle. Ms. TORKELSON walked out with her mother to her mother's vehicle and got the clothes. Her mother asked her what was going on with the man she was having the meal with and her mother cautioned her.

Ms. TORKELSON also provided me with a program from the "Tubonium". This indicated MICHAEL FORBES was going to be a soloist with a Euphonium or Tuba during the event dated April 22-23, 2005.

It further indicated Mr. FORBES was going to perform with the Illinois State Faculty Brass Quintet featuring AAMY GILREATH, ADAM BERGERON, STEPHEN PARSONS, and GARY HOLLANDER

It also indicated Mr. FORBES was the Assistant Professor of Tuba and Euphonium at Illinois State University (ISU).

NAME OF COMPLAINANT

**CONFIDENTIAL**

CASE NO.

TORKELSON, ANNIKA MARIE

05-002512

OFFENSE

OFFICER/PAGE #

5TH Degree Criminal Sexual Conduct

Sgt. Yushta Page 5

*DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.,*
*(Investigating Officer must sign)*

DATE: 05-05-2005

---

Ms. TORKELSON indicated she would like some time to consider whether or not she wanted to pursue a criminal investigation of the event. I asked her to contact me when she had determined what she wanted done.

On 05-31-2005 at 1010 hours, I called Ms. TORKELSON and she indicated she did not wish to pursue criminal charges but was concerned about Mr. FORBES behaving in this fashion on other campuses. She asked me to consider advising ISU of the problem and authorized me to do so. I told her I would discuss it with GAC Safety and Security as to an appropriate venue to do so.

On 08-29-2005, at 1515 hours, I spoke with Captain KEITH GEHRAND, Illinois State University Police (309-438-8631) regarding this file. After a short discussion, I indicated I would call Mr. FORBES.
Captain GEHRAND provided an address to forward a copy of the case file to his agency (ISU, Box 9240, Normal, IL 61790-9240).

On 08-29-2005 hours, at 1550 hours, I called Mr. FORBES at 309-438-5817. An answering machine responded and an adult male voice stated: "Hello, you've reached MIKE FORBES at the Tub-Euphonium Studio at Illinois State University. I'm unable to take your call right now because I am either away from my desk or in the middle of a lesson but please leave your name and a message and I will return your call as soon as I can". I left a message asking him to return my call.

On 08-30-2005, I found a voice message on my phone from MIKE FORBES. "Hi, Sergeant YUSHTA this is MIKE FORBES calling. I got your message on my work message machine. I'm off the road at the moment and I've been trying to catch you here, looks like you had a meeting earlier today, I'm jumping from pay phone to pay phone but my cell phone now has service and I'm gonna give you that number if you want to give me a call back that would be great. The number is 309-287-2006". This was recorded at 3:42 PM on 08-30-2005.

On 08-31-2005, at 1326 hours, I received another call from MIKE FORBES. He identified himself as such when I answered.
I informed Mr. FORBES that I had received a report regarding a contact with Ms. TORKELSON during the Tubonium Festival on 04-22-2005. He confirmed that he was at the event on that date and was a soloist.
He recalled Ms. TORKELSON. I explained that we were not pursuing a criminal complaint however she was concerned about him returning to the GAC campus while she was a student. I further indicated that I only had one

| NAME OF COMPLAINANT | **CONFIDENTIAL** | CASE NO. |
|---|---|---|
| TORKELSON, ANNIKA MARIE | | 05-002512 |

| OFFENSE | OFFICER /PAGE # |
|---|---|
| 5TH Degree Criminal Sexual Conduct | Sgt. Yushta Page 6 |

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.,
(Investigating Officer must sign)

DATE: 05-05-2005

side of the story. I offered him the opportunity to tell his side about a sexual incident that occurred in her dormitory at GAC.

Mr. FORBES stated: "I don't have any intention of coming back to the Gustavus campus. I do think that her coming forward with this is a little peculiar cause I felt I was the one being more put on the spot than she was. I'm not sure if she is rebelling in some way because I didn't do what she had kinda hoped to have happen or what but I'm gonna stay clear of it for now. If she wants to leave it as it is, that's fine by me. I'm not going to push anything or I don't intent to come back there in any way, shape, or form. So if you want to relay that to her that the fact that I will stay clear of Gustavus Adolphus for at least the next four years if not more and we'll just leave it at that. If she wants to pursue it further of course I will get my lawyer involved and we'll take it from there, but, I think everything that I know of was consensual, as far as we were involved, and I don't actually think that anything remotely sexual actually occurred".

On 09-05-2005, I met Ms. TORKELSON in front on campus at the intersection of Three Flags Road and Capitol Drive by North Dormitory. I explained where the file was. She indicated she would still like a copy of the file sent to ISU and was not concerned about the information being released with her name visible in the material.

ON 09-26-2005, I mailed the material to ISU via US Postal Service.


Jerold W. Yushta
Investigative Sergeant

CONFIDENTIAL

April 23, 2005 – Tubonium 2005

Offender: Micheal Forbes – Professor of Music at Illinois State University

It started out by him asking me where a good place in town to eat was. Of course I told him the cafeteria was a great place to eat. I sensed he was sort of flirting with me because he said it must not be that good because I'm so slim. I just laughed it off and told him I've only been here a year. I wasn't done with my shift at the registration table yet but he asked if I could take him to the cafeteria. Since I hadn't eaten yet I figured it would be a good deal to have lunch with a music professor to discuss a career in the music industry. Well on the walk over to the cafeteria he rubbed my back and it wasn't a calm pat. Later, still on the way to the cafeteria, he grabbed my shoulder and pulled me toward him and kissed my ear. Then he tried to kiss me again and I pulled away saying no. I then asked him how his wife and 5-month old are doing. He looked surprised because he didn't know that I knew. I only knew because I had eves dropped in on one of his conversations in the music building after he had asked me to go to lunch with him. So we went to lunch and chatted about music and his career. And he was asking me personal questions like if I had a boyfriend and how that was going. I realize I should have lied and not told him that I'm single. Then my mother came to drop off my things from home. I had to go out the van to get my stuff and my mother was concerned about the professor being so kind to me. I told her that I had things under control and that he was just a nice man. I felt like I had enough self-confidence that if anything were to happen I could tell him no and get out of the situation. But later after the fact I now know that at that moment I could have easily just left and not gone back to him in the

cafeteria. But I went back to him and he asked me where I was going to go after lunch. I told him (regretfully) that I had to go back to my dorm to take my stuff up there and then back to the music building. He asked me if he could come up with me. He said he would help me carry my stuff. And at first I'm like no, he would probably try something and we'd be all alone. But he kept pushing it on me for quite awhile and I kept saying that I wouldn't let us get into that situation because he's married but, finally I'm like fine, just to get my stuff up there and then we leave. I knew that he was going to try and kiss me again but I figured I could handle that and that would be it. So when we got up to my room as I was organizing my things I was bending over my backpack and he started giving me a backrub. I just ignored him. Then when I stood up he caught my shoulders and made out with me. He kept saying how beautiful I was and then he pulled my hand down to his penis and forced me to rub it. I then stepped back and told him I couldn't do this. So I stepped out of the room. When I came back he was laying on my futon and as I was packing up some more of my things he pointed to his penis and he's like, "you know, this is really going to hurt later." And I'm like, yeah, so? He said, well can I come in here? I said, well can't you just do it in the bathroom? He said, no. So I'm like fine just do it here. He asked me to sit down but I didn't watch it like he wanted me to. And he even said, "You're not watching it!" So I stood up so I wouldn't have to watch it. I stood next to him and he tried kissing me again but I didn't let him and he even tried to grab my hand to help him on but I said no. I got Kleenexes for him to come in and I turned my back when he actually had his orgasm.

Then he got his pants back on and we headed back to the music building. On the way there he asked me how I was feeling and I said fine. And he was like don't you need to


CONFIDENTIAL

get off too? And laughing, "or are you just going to do it later?" I'm like, "No, I feel fine." After we got out of my dorm room I hadn't said much to him, and he said I was acting all cold and now he felt bad for what he did. And I'm like, well what do you expect? Then he made me promise that I wouldn't tell a soul. So, I promised just to make him happy and he also promised that he wouldn't tell anyone either.

About 5 1/2 hours later (after the final recital of the conference) as I was waiting to talk to a performer, Forbes found me and started chatting with me again. He kept saying how nice it was to have met me and noticed that I had changed (which I did, to something not as flattering as my dress slacks and coat, which I had on before) and that I had a retainer in. There were other college students around me (tuba and euphonium players from Eau Claire U.) and I think they picked up on the fact that Forbes was flirting with me because one of them smiled and shook his head saying, "No, Mike". Then he finally left.

**CONFIDENTIAL**

# OFFICE FOR DIVERSITY & AFFIRMATIVE ACTION

## FINDINGS

On April 23, 2005, at approximately 2:00 P.M. the Respondent joined the Complainant for lunch in the GAC cafeteria. Over lunch the Respondent and Complainant discussed the GAC and ISU music education programs. During this conversation the Complainant expressed an interest in transferring from GAC to ISU. In addition, both the Respondent and the Complainant admitted that a variety of personal topics were candidly discussed including the Respondent's marital status and the fact that the Complainant was single.

At approximately 3:00 P.M. the Respondent and the Complainant left the GAC cafeteria. The Complainant told the Respondent that she had returned to the GAC campus from spending the weekend at home and was going to excuse herself in order to carry some personal effects from her car to her dorm room. The Respondent volunteered to help the Complainant carry her items to the room which was located 402 Norelius Hall.

The Complainant's specific allegations are:

- **Without the prior consent of the Complainant, the Respondent kissed the Complainant on the lips once and on the cheek twice.**

  FINDING – Without the presence of witnesses or independent evidence the investigation yielded no evidence to support the Complainant's allegation that the Respondent behaved in an inappropriate and unwelcome sexually harassing behavior.

- **Against her will, the Respondent directed the Complainant's hand to his genitals coaxing her to rub his penis and then asked the Complainant to watch him masturbate while both parties were in her dorm room.**

  FINDING – The investigation yielded no evidence to support neither the Complainant's nor the Respondent's recollection of the events that took place in the Complainant's dorm room.


## CONCLUSION

Although no evidence was found to substantiate the Complainant's allegations that the Respondent engaged in unprofessional, inappropriate, or unwelcome sexually harassing behavior, it should be noted that it is of great concern to the ODAA that the Respondent has had two allegations of sexual harassment filed against him within a six month period of time. It is obvious that the Respondent exercised extremely poor judgment by escorting the Complainant to her dorm room and placing himself in a vulnerable position.



# ILLINOIS STATE
## UNIVERSITY

*The Office for Diversity and*
*Affirmative Action*

Normal, IL 61790-1280
Telephone: (309) 438-3383
Facsimile: (309) 438-7395
TTY (309) 438-2554

June 10, 2005

CERTIFIED MAIL
Dr. Michael Forbes
████████████
Bloomington, IL 61701-1824

Dear Dr. Forbes:

The Illinois State University Office for Diversity & Affirmative Action (ODAA) has investigated the complaint filed in our office against you by Kristina Blankenfeld alleging incidents of sexual harassment. This letter represents the findings issued by the ODAA.

The ODAA found no evidence to support Ms. Blankenfeld's allegations that you conducted yourself in an unprofessional, inappropriate or sexually harassing manner.

In regard to Ms. Blakenfeld's specific sexual harassment allegations the ODAA found:

- No evidence to suggest that you engaged in any behavior that would be deemed inappropriate, unwelcome, or sexually harassing. Although both you and Ms. Blakenfeld were present at the Midwest Tuba Conference after party, the ODAA found no evidence to support Ms. Blankenfeld's portrayal of allegations.

- No evidence exists to support the claim that you made comments that could reasonably be perceived as inappropriate, sexually charged, or sexually harassing regarding Ms. Blakenfeld's physical appearance.

Should you have any questions or concerns regarding this investigation, please contact the ODAA to more fully discuss the findings of this investigation.

Sincerely,



Josephine Evola
Acting Director



**EXHIBIT**
7 9-10-09

cc:    Dr. C. Alvin Bowman, President
       Dr. John W. Presley, Vice-President and Provost
       Renee Smith-Byas, General Counsel
       Dr. John Major, Director, School of Music



*The Office for Diversity and*
*Affirmative Action*

Normal, IL 61790-1280
Telephone: (309) 438-3383
Facsimile: (309) 438-7395
TTY (309) 438-2554

January 18, 2006

CERTIFIED MAIL
Dr. Michael I. Forbes

Bloomington, IL 61701

Dear Dr. Forbes:

The Office for Diversity and Affirmative Action (ODAA) has investigated the allegation made by Annika Torkelson (Complainant) against you claiming that you engaged in inappropriate, unprofessional and sexually harassing behavior while attending an Illinois State University sponsored performance of the ISU Faculty Brass Quintet on the campus of Gustavus Adolphus College (GAC).

Below are the ODAA's official findings in this matter:

- On April 23, 2005, at approximately 2:00 P.M. you joined the Complainant for lunch in the GAC cafeteria. Over lunch the two of you discussed the GAC and ISU music education programs. During this conversation the Complainant expressed an interest in transferring from GAC to ISU. In addition, both you and the Complainant admitted that a variety of personal topics were candidly discussed including your marital status and the fact that the Complainant was attractive and single.

- On April 23, 2005, at approximately 3:00 P.M. you and the Complainant left the GAC cafeteria. The Complainant told you that she had returned to the GAC campus from spending the weekend at home and was going to excuse herself in order to carry some personal effects from her car to her dorm room. You volunteered to help the Complainant carry her items to the room which was located 402 Norelius Hall.

From this point forward, the events you described as well as those described by the Complainant differ significantly. To summarize, you describe the events that followed as a misunderstanding between you and the Complainant wherein the Complainant made an advance at you and when it was not reciprocated she grew awkward and embarrassed. Conversely, the Complainant describes the incident as being initiated by you involving you encouraging the Complainant to touch your genitals as you kissed her.



**EXHIBIT**
89019
DB

*An equal opportunity/affirmative action university encouraging diversity*

00291

With there being no witnesses to this incident or independent evidence to verify one party's account of the events, the ODAA finds there to be insufficient evidence to sustain the Complainant's allegation.

Therefore, the ODAA concludes:

- No evidence was found to substantiate the Complainant's allegations that you engaged in inappropriate, unprofessional and/or sexually harassing behavior.

Dr. Forbes, it should be noted that it is of great concern to the ODAA that you have had two allegations of sexual harassment filed against you within a six month period of time. Although it is recognized that there is little, if anything, an individual can do to prevent a Complainant from exercising their due process right to request a formal investigation by the ODAA, you have admittedly used poor judgment by fraternizing with an intoxicated female pupil at an off campus party and in this instance placed yourself in a female student's dorm room. I urge you to exercise better judgment in the future.

Sincerely,



M. Shane McCreery, J.D.
Acting Director

cc:    Dr. C. Alvin Bowman, President, Illinios State University
       Dr. John W. Presley, Vice President for Academic Affairs and Provost
       Dr. Lonny J. Gordon, Dean, College of Fine Arts
       Dr. James Major, Director, School of Music
       Dr. Ira Schoenwald, Associate Vice President, Human Resources

**E-mail**

## Read Email

| | | | | | | Move to Folder | | Move | | | | |

| | |
|---|---|
| From: | Mike Forbes <miforbe@ilstu.edu> |
| To: | Hunt Megan Marie <mmhunt@ilstu.edu> |
| Cc: | |
| Subject: | Fwd: Tuba Party |
| Date: | Mon Feb 21 22:42:27 CST 2005 |

Hi Megan,

Thanks for the chat earlier today and for all your help with the conference--especially with the clean up! Sorry John and I took so long with Ed Livingston.

Anyway, here's an email I received from an "anonymous" student at ISU, and I just wanted to make sure we're cool. I certainly didn't mean to be "unprofessional" with you...nor do I see it that way--I thought we're just all in party-mode, and as friends and colleagues I think things were cool. By the way, I didn't bet Brian that he would or would not sleep with you that night--if I were going to bet him, however, I would have bet that he would NOT have ever been so lucky...I hope you don't take offence to all of this silliness. It's a sad time in society when college students and prof's can't have a good time socializing any more. I'm sorry if I caused you any issues today in this "high school" we call a "music school."

See you tomorrow.

Sincerely,
Dr. Forbes

>Date: Mon, 21 Feb 2005 22:47:56 +0000
>From: Zach Pinkerton <anon_isu@hotmail.com>
>Subject: Tuba Party
>X-Originating-IP: [138.87.210.24]
>X-Sender: anon_isu@hotmail.com
>To: miforbe@ilstu.edu
>Bcc:
>X-Originating-Email: [anon_isu@hotmail.com]
>Original-recipient: rfc822;miforbe@ilstu.edu
>X-OriginalArrivalTime: 21 Feb 2005 22:48:00.0516 (UTC)
> FILETIME=[6500DA60:01C51667]
>
>Dr. Forbes,
>
>I wanted to let you know, as a person who admires and respects you
>greatly, that I have fear of your position here at Illinois State
>University. At the party yesterday you may have offended a few
>female students. Rumors are now circulating that they may go to
>some superiors. I felt that I should warn you and maybe an apology
>is in order for these ladies. Please do not respond to this email,
>as you will not receive a response.
>
>Respectfully,
>
>Zach Pinkerton
>
>

EXHIBIT

9  9-10-07

DB

# ILLINOIS STATE
## UNIVERSITY





*The Office for Diversity and*
*Affirmative Action*

Normal, IL 61790-1280
Telephone: (309) 438-3383
Facsimile: (309) 438-7395
TTY (309) 438-2554

January 3, 2006

Dr. Michael I. Forbes
Assistant Professor
███████████████████
Bloomington, Illinois 61701

Dear Dr. Forbes:

Illinois State University has a duty to ensure an educational and work environment free of harassment and discrimination. In order to administer its responsibilities effectively, the University has a right to gather information regarding allegations concerning a possible violation of Illinois State University policy.

This letter is to inform you that the Office for Diversity and Affirmative Action (ODAA) has received a formal written complaint against you alleging that you engaged in inappropriate, unprofessional and sexually harassing behavior against Annika Torkelson, a student at Gustavus Adolphus College while on a University sponsored trip to St. Peter, Minnesota.

Please find enclosed the Illinois State University policy and grievance procedures regarding Sexual Harassment. Note that Illinois State University's Sexual Harassment Policy prohibits retaliation against those who are asked to cooperate in an ongoing ODAA investigation. Any allegation of retaliation, initiated by anyone participating in this investigation, will be deemed a separate and distinct violation of Illinois State University's Sexual Harassment Policy and will be independently investigated. Additionally, all persons who are involved in an ODAA investigation are cautioned not to publicize or divulge the nature of the proceedings or the identities of those involved.

Should you have any questions about the policy or procedures feel welcome to contact me. I will be in touch shortly to arrange a second interview.

Sincerely,

███████████████████

M. Shane McCreery
Acting Director

Cc:    Dr. C. Alvin Bowman, President, Illinois State University
        Dr. John W. Presley, Vice-President for Academic Affairs and Provost
        Dr. Lonny J. Gordon, Dean, College of Fine Arts
        Dr. James Major, Director, School of Music



: 00293