UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MEGAN HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-1095 |
| | ) |
| MICHAEL I. FORBES, in his | ) |
| individual capacity, and | ) |
| ILLINOIS STATE UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Now before the Court is Defendant Illinois State University's ("ISU") Motion for Summary Judgment [#34]. For the reasons set forth below, ISU's motion is GRANTED.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claim arises under Title IX, 20 U.S.C. § 1681(a).

**BACKGROUND**

Defendant Dr. Michael Forbes ("Forbes") was a tuba/euphonium professor in ISU's School of Music from August 2002 until May 2006. In the fall of 2002, Forbes attended a student's house party, the "Tuba Turkey" party, with ISU music students.[1] No other faculty

---

[1] In his deposition, Forbes explained that the Tuba Turkey party was a tradition where ISU tuba students and their teachers would get together in a non-university related social situation. Elsewhere in the record, the Tuba Turkey party is identified as an initiation rite for

members attended the party, and Forbes did so because he felt pressured by his students due to his faculty position. Kristina Blankenfeld ("Blankenfeld"), an ISU music student, attended that Tuba Turkey party as well. Afterward, she complained to Dr. James Major ("Dr. Major"), ISU's Director of the School of Music, that Forbes' presence at the party made her feel uncomfortable, and while at the party, Forbes suggested she take off her shirt and make out with the male tuba students.[2] Dr. Major called ISU's Office of Diversity and Affirmative Action ("ODAA"), and was told to encourage Blankenfeld to go speak with the ODAA. Dr. Major told Blankenfeld to go to the ODAA, but she did not. Dr. Major then spoke with Forbes about Blankenfeld's accusation, directed him to act professionally and not attend any parties or functions where there was drinking and students, and got the School Faculty Status Committee ("SFSC")[3] involved to discuss the incident with Forbes. Dr. Major also transferred Blankenfeld from Forbes' tuba instruction to another professor. In the three years following the Tuba Turkey party incident, Dr. Major learned of no new incidents or complaints involving Forbes going to parties where students and alcohol were present.

In February 2005, Blankenfeld attended another student house party where Forbes and other faculty members were present. Afterward, in March 2005, she complained to the ODAA that Forbes had made suggestive comments about her skinny appearance, put his arm around her,

---

new students.

[2] During his deposition, Dr. Major did not recall Blakenfeld telling him anything other than that Forbes' presence made her feel uncomfortable at the 2002 party. Blakenfeld explained to the ODAA, during the 2005 investigation, what Forbes had suggested to her at the 2002 party.

[3] The SFSC is comprised of Music School faculty members who evaluate the performance of tenured and tenure-track faculty members, and recommends whether to renew faculty members' contracts.

put his hand up her shirt and started rubbing her back, and eventually leaned in and kissed her on the cheek. Blankenfeld went forward with a formal complaint against Forbes. The ODAA investigated the complaint, and interviewed Blankenfeld and Forbes, as well as Dr. Major, Tabitha Boorsma, Nat McIntosh, Dr. John Stevens, and Matt Doherty.[4] The ODAA interviewed the people Blakenfeld named as those who she said saw what happened between her and Forbes. The formal investigation revealed that the named individuals denied seeing Forbes engage in inappropriate conduct. In June 2005, the ODAA informed Forbes that it did not find any evidence to substantiate Blankenfeld's allegations that Forbes acted in an unprofessional, inappropriate, or sexually harassing manner. Dr. Major also received a copy of the ODAA investigation findings, and afterward had a conversation with Forbes that he was disappointed with the latter going against his earlier directive to not attend parties where students and alcohol were present. At the same February 2005 party which prompted Blankenfeld's formal complaint against Forbes, Plaintiff Hunt alleges that she too was sexually harassed by Forbes. Hunt alleges that Forbes bumped up against her, put his hand on her stomach, and told her she felt really good. Hunt did not report the incident at that time.

On September 26, 2005, the ISU Police Department received a letter from the City of Saint Peter, Minnesota's Police Department. The letter explained that Annika Torkelson, a 19-year-old female student at Gustavus Adolphus College, alleged that she had a sexual encounter with Forbes while he was visiting the school for a Tubonium program that included visiting college staff members. Torkelson further alleged that following the program, she felt pressured

---

[4] Boorsma, McIntosh, Dr. Stevens, and Doherty were all present at the party attended by Blankenfeld and Forbes.

into doing sexual acts with Forbes in her dorm room. She did not pursue criminal charges. In a letter dated October 31, 2005, from Ira Schoenwald, ISU's Associate Vice President of Human Resources, Forbes was informed of the communication from Gustavus Adolphus College regarding the incident with Torkelson, he was told the matter was referred to the ODAA, and was told Schoenwald requested that Dr. Major suspend Forbes' obligations to represent ISU off campus during the investigation. On November 2, 2005, Dr. Major sent Forbes a similar letter and explained that it was mandatory that Forbes would not represent ISU outside of Bloomington/Normal pending the investigation's completion. Following the formal investigation into Torkelson's complaint by ISU's ODAA, it concluded that no evidence was found to substantiate her allegations of Forbes' unprofessional, inappropriate, or unwelcome sexually harassing behavior. But the ODAA further noted that it was of concern to it that Forbes had two allegations of sexual harassment filed against him within a six month period of time. In a January 18, 2006, letter, Forbes was informed of the ODAA's findings following the investigation into Torkelson's complaint. On March 31, 2006, Schoenwald sent Dr. Major a letter requesting that the restrictions on Forbes' external activities be lifted as a result of the investigation's findings. During oral argument, ISU elaborated that the ODAA attempted to contact Torkelson

    Plaintiff Hunt played the trombone, and was a music student at ISU's School of Music from Fall 2003 through Spring 2007. Between the February 2005 house party and December 2005, a number of incidents occurred between Hunt and Forbes involving Forbes commenting to or touching Hunt in what Hunt believed to be a sexually harassing manner. The incidents continued into 2006. Some occurred on a stairwell at ISU, another incident occurred in Hunt's

car in February 2006, another in a practice room at Cook Hall on ISU's campus in March 2006, and finally an incident on April 22, 2006. Prior to April 22, 2006, Hunt had babysat for Forbes' daughter a number of times at the home of Forbes and his wife during Spring 2006. On April 22, 2006, Hunt arrived at the Forbes' home to babysit their daughter and found only Forbes and his daughter home. Soon after her arrival, an incident between Hunt and Forbes ensued where Forbes kissed a tattoo on Hunt's hip, they kissed, Forbes exposed his penis, and Hunt kissed it.

On April 29, 2006, Hunt told Dr. Major about what happened at Forbes' home on April 22, 2006. Dr. Major directed her to go to the ODAA, and days later when Hunt had not do so on her own, he escorted her to Shane McCreery ("McCreery"), Director of the ODAA, so that she could report the incident. Because McCreery believed the incident was sexual assault rather than sexual harassment, he escorted Hunt to the ISU police to make a complaint, and the ODAA did not conduct any further investigation into the matter because it had been turned over to the ISU police. Dr. Major also did not have any further involvement in the matter as a result of the ISU police becoming involved. The first time ISU learned of Forbes' alleged sexual harassment of Hunt was on April 29, 2006, when Hunt approached Dr. Major about the babysitting incident. Hunt ultimately cooperated with a criminal investigation into Forbes' conduct, and participated in surreptitiously recorded phone calls between her and Forbes.

In the spring of 2006, not long after the ODAA's investigative findings regarding the Torkelson complaint came out, the SFSC discussed Forbes' continued employment at ISU. The SFSC considered his performance as a faculty member, his previous insubordination in failing to follow Dr. Major's directives regarding parties, and his possibly inappropriate behavior that had been investigated and found unsubstantiated by the ODAA. In a March 2006, letter, ISU

5

informed Forbes that his employment would terminate at the end of the 2006-07 school year. In an April 28, 2006, letter, Forbes informed Dr. Major that he was resigning his position effective May 15, 2006, and he would be taking a position at another university.

On April 16, 2007, Hunt filed her Complaint against Forbes and ISU, alleging a Section 1983 claim against Forbes[5] and a Title IX claim against ISU as a result of its alleged deliberate indifference to the sexual harassment of Hunt and other students at ISU. The matter is fully briefed, and oral argument was held on April 14, 2010. This Order follows.

## DISCUSSION

**I.  Summary Judgment**

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988). If the moving party meets its burden, the burden shifts to the nonmoving party to present specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the

---

[5] The Court was informed that Forbes was discharged in bankruptcy on December 4, 2008, and as a result, Plaintiff Hunt was permanently enjoined from asserting personal liability against him. *See* 3/17/2009 Order, Dkt 25, p. 1. On March 17, 2009, the Court found that as a nominal party, Forbes does not need representation in this action. *Id.* at 3.

pleadings and produce evidence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This Court must then determine whether there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

**II.     Title IX**

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in educational programs and activities which receive federal funding. *Mary M. v. North Lawrence Community School Corp.*, 131 F.3d 1220, 1224 (7th Cir. 1997), *cert. denied*, 118 S.Ct. 2369 (1998). Specifically, the relevant portion of Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

In order to establish a prima facie case under Title IX, the plaintiff must show: 1) she was subjected to unwelcome harassment, 2) the harassment was based on her sex, and 3) the harassment was sufficiently severe or pervasive . . . so as to create a hostile or abusive atmosphere. *Lucero v. Nettle Creek School Corp.*, 566 F.3d 720, 731 (7th Cir. 2009). "When a claim for damages is based on the behavior of a teacher or of some other employee of the Title IX recipient, the plaintiff must prove that 'an official of the [defendant educational institution]

who at a minimum has authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'" *Delgado v. Stegall*, 367 F.3d 668, 671 (7th Cir. 2004), *citing Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 277 (1998).[6]

### A.  Actual Notice

ISU first argues that it did not have actual notice that Forbes engaged in conduct in violation of Title IX at the time Hunt complained to ISU on April 29, 2006. ISU contends that because the 2002 complaint was too vague, and the 2005 complaints were unsubstantiated,[7] they could not serve as actual notice to the university or its officials that Forbes engaged in conduct in violation of Title IX. ISU argues that because the previous complaints did not amount to Title IX violations, it did not have actual knowledge of a violation which is necessary to trigger institutional liability under Title IX. ISU cites to *Gebser v. Lago Vista Indep. School Dist.*, where the Supreme Court held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the

---

[6] In its Reply brief, ISU explains that Hunt's ability to make out a prima facie case does not defeat ISU's argument that no basis for institutional liability exists because it was not deliberately indifferent to a Title IX violation of which it had actual notice. Dft's Reply, p.2, n. 1. ISU does not otherwise argue that Hunt cannot make out a prima facie case for Title IX harassment. Because ISU proceeds in such a manner, the Court will similarly proceed and will not address the issue of whether Hunt can make out a prima facie case for Title IX harassment.

[7] ISU does not cite to any case in support of its contention that unsubstantiated allegations of improper conduct cannot serve as actual notice to school officials of a teacher's misconduct. In *Hart v. Paint Valley Local School Dist.*, the district court explained that whether unsubstantiated complaints, denied by the allegedly offending teacher, put the school district on actual notice of a substantial risk to students posed by the teacher is usually a question for the jury. 2002 WL 31951264, at *6 (S.D. Ohio Nov. 15, 2002).

recipient's programs . . . ." 524 U.S. 274, 290 (1998). The Court went on to hold that there must be "an official decision by the recipient not to remedy the violation." *Id.*

ISU's interpretation of *Gebser*'s actual knowledge requirement appears too literal. The *Gebser* court only went so far as to say that the principal's knowledge that the teacher made inappropriate comments during class was not sufficient to alert the principal to the possibility that the teacher was involved in sexual relationship with a student. 524 U.S. at 291. In *Delgado*, the Seventh Circuit held that in a Title IX damages suit based upon a teacher's behavior, a plaintiff must prove actual knowledge by school officials of the misconduct, and not just actual knowledge of the risk of misconduct. 367 F.3d at 672 (teacher not known by defendant school officials to be harassing other students). Furthermore, "When the cases speak of 'known' or 'obvious' risk that makes a failure to take steps against it reckless they have in mind risks so great that they are almost certain to materialize if nothing is done . . . ." *Id.* (citing cases); *see also Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 605-06 (7th Cir. 2008) (plaintiffs had to establish genuine issue of fact as to whether an appropriate official at the school had actual knowledge of misconduct by the teacher that created serious risk to its students for purposes of summary judgment); *Smith v. Metro. School Dist. Perry Twp.*, 128 F.3d 1014, 1034 (7th Cir. 1997) (where defendant had no knowledge of "alleged discrimination," it could not have intentionally discriminated against the plaintiff); *and Bostic v. Smyrna School Dist.*, 418 F.3d 355, 360-61 (3d Cir. 2005) (district court did not err in instructing the jury that an educational institution has actual knowledge if "it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger"). The defendant must have knowledge of previous acts of sexual harassment by the teacher, not of

previous acts directed against the particular plaintiff. *Delgado*, 367 F.3d at 672.

ISU also cites to *Gabrielle M. v. Park Forest-Chicago Heights, Ill. School Dist. 163*, which provides that in the context of peer-harassment cases, reports or observations in the record of inappropriate behavior have been considered in order to determine when school officials had actual notice. 315 F.3d 817, 823-24 (7th Cir. 2003). The *Gabrielle M.* court considered whether school officials had actual knowledge of the classmate's allegedly harassing conduct of a sexual nature. *Id.* at 823-24. Therefore, it appears that the Seventh Circuit's interpretation of the actual knowledge requirement in *Gebser*, is that the defendant school officials must have had actual knowledge of misconduct at least suggesting sexual harassment.

Here, ISU does not otherwise dispute that it was made aware of Forbes' allegedly improper conduct towards Blakenfeld and Torkelson prior to Hunt complaining in April 2006. Hunt argues that ISU was "multiply notified [sic]" of sexually harassing conduct by Forbes. She points to Blakenfeld's 2002 complaint to Dr. Major about Forbes' conduct at the Tuba Turkey party, Blakenfeld's 2005 formal complaint to the ODAA about Forbes' conduct at a February 2005 party, and the 2005 incident involving Torkelson, of which ISU was made aware by Saint Peter, Minnesota's Police Department and Torkelson's own formal complaint to ISU's ODAA. Though Dr. Major could only recall that Blakenfeld's 2002 complaint was that Forbes' presence at the Tuba Turkey party made her feel uncomfortable, her 2005 complaint to the ODAA included allegations that Forbes touched her, rubbed her back, and made comments about her appearance. The Saint Peter Police Department notified ISU of the alleged sexual encounter between Torkelson and Forbes, and included the details of the alleged encounter, including that Forbes kissed Torkelson, had her touch his penis, and masturbated in front of her. ISU did not

learn of Forbes' alleged sexual harassment of Hunt between 2005 and 2006 until she complained to Dr. Major and the ODAA in April 2006.[8]

The allegations of Forbes' misconduct, of which ISU was made aware prior to Hunt's complaint on April 29, 2006, certainly suggested it was conduct of a sexually harassing nature. ISU was not just notified merely of a risk that Forbes would harass a student sexually, but was notified that students had allegedly experienced his sexual harassment. Such notice appears to satisfy the requirement of actual knowledge for purposes of ISU's institutional liability under Title IX.

At the very least, Hunt's evidence of what ISU learned in 2002 and 2005 raises a genuine issue of material fact as to ISU's knowledge that female students were at so great a risk of being sexually harassed that such risk was almost certain to materialize if nothing were done about it. *Cf. Delgado*, 367 F.3d at 671, 672 (teacher not known to be harassing other students where three other women never filed complaints that teacher had made advances toward them); *Smith*, 128 F.3d at 1034 (defendant had no knowledge of sexual harassment where plaintiff and teacher kept their relationship secret); *and Doe v. Coats*, 2005 WL 2099797, at *5 (S.D. Ind. Aug. 29, 2005) (plaintiffs gathered enough evidence to raise genuine issue of material fact regarding defendants' actual knowledge of molestation, even though defendants argued statements made to them were vague, hearsay, and did not contain allegations of sexual harassment).

However, regardless of whether ISU had the requisite notice, Hunt's Title IX claim fails

---

[8] Hunt takes issue with the fact that the ODAA did not uncover in its 2005 investigation Forbes' harassing conduct directed toward Hunt at the same February 2005 party Blankenfeld attended. Hunt concludes that such a failure suggests it was a cursory, if not sham, investigation. The Court will address this argument in the deliberate indifference portion of its Discussion.

because she cannot demonstrate that ISU acted with deliberate indifference at any of the identified times. *See Sauls v. Pierce County School Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) (actual notice issue did not have to be addressed where plaintiff could not show school officials acted with deliberate indifference at any of the relevant times).

### B. Deliberate Indifference

A damages remedy under Title IX is not available unless a school official, with actual knowledge of discrimination in the recipient's programs, and with the requisite authority to address the alleged discrimination and institute corrective measures on the recipient's behalf fails to adequately respond. *Gebser*, 524 U.S. at 290. "[U]nder the Supreme Court's formula, the plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct . . . and must also prove that the officials having that knowledge decided not to act on it." *Delgado*, 367 F.3d at 672; *see also Smith*, 128 F.3d at 1034 (defendant school district liable under Title IX only where school official with actual knowledge of the abuse and the power to take action to end such abuse fails to do so). Whether school officials' response to actual knowledge of discrimination amounts to deliberate indifference may be resolved on a motion for summary judgment. *Davis Next Friend LaShonda D. v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 649 (1999); *Doe ex rel. Doe v. Dallas Indep. School Dist.*, 220 F.3d 380, 387 (5th Cir. 2000). A court can, in an appropriate case, and on a motion for summary judgment, identify a response as not "clearly unreasonable" as a matter of law. *Davis*, 526 U.S. at 649.

Here, ISU argues that it took appropriate remedial action against Forbes even in the face of allegations of misconduct that were not themselves sufficient to constitute Title IX violations,

and were ultimately unsubstantiated by further investigation. In 2002, following Blakenfeld's complaint to Dr. Major that she felt uncomfortable as a result of Forbes' presence at the Tuba Turkey party, Dr. Major immediately dealt with the situation. Though there is no official record of disciplinary action taken against Forbes as a result of Blakenfeld's complaint, Dr. Major did confront Forbes, telling him that he should not attend parties where students and alcohol were present, that he should act professionally, and brought the matter to the SFSC's attention. Dr. Major recalled that the SFSC discussed with Forbes what relationships were appropriate to have with students. Dr. Major also reassigned Blakenfeld from Forbes' instruction to another tuba instructor to take place immediately,[9] and encouraged Blakenfeld to go to the ODAA. Hunt concedes that ISU's response to Blakenfeld's complaint to Dr. Major in 2002 was sufficient.

The next two times ISU received a complaint about Forbes' alleged misconduct, both in 2005, the ODAA conducted formal investigations. Upon Blakenfeld filing a formal complaint with the ODAA, the ODAA conducted an investigation into the matter which lasted for at least two months. The ODAA interviewed at least seven people, including Blakenfeld, Forbes, Dr. Major, and a number of people who were present at the February 2005 party whom Blakenfeld named as those who might be able to substantiate her allegations. During oral argument, ISU emphasized that it interviewed the other partygoers who Blakenfeld said saw Forbes' misconduct, and that those named witnesses did not substantiate her claims. Plaintiff's counsel conceded that fact. The ODAA ultimately made no recommendations at the conclusion of the investigation, as Blakenfeld's allegations were found to be unsubstantiated. ISU points to the

---

[9] ISU emphasizes that even though Blakenfeld did not complain of inappropriate conduct by Forbes in any instructional setting, Dr. Major still transferred her from Forbes' instruction. In the fall of 2004, Blakenfeld requested to be returned to Forbes' studio for one-on-one instruction.

additional steps it took following the 2005 complaint made by Blakenfeld. Dr. Major again spoke with Forbes after the ODAA completed its investigation into Blakenfeld's 2005 complaint, telling Forbes he was disappointed with him for not following his earlier directive, questioning Forbes as to why he would put himself in such a position, and repeating to Forbes to do the right thing. ISU argues that the remedial action Dr. Major took following the results of the 2005 Blakenfeld complaint was reasonable in light of the unsubstantiated allegations, and the fact that a similar directive to Forbes in 2002 had otherwise been effective during the intervening years.

Similarly, when it came to Torkelson's complaint, the ODAA conducted its own investigation, considered her April 2005 statements to the Saint Peter, Minnesota Police, her affidavit accompanying the ODAA complaint, and interviewed Forbes. The ODAA ultimately made no recommendations at the conclusion of the Torkelson investigation because her allegations were found to be unsubstantiated. ISU again points to the additional steps it took following Torkelson's complaint. Both Schoenwald and Dr. Major wrote to Forbes informing him of the allegations made by Torkelson, and explaining that while the ODAA's investigation into the matter was pending, Forbes was relieved of his obligations to represent ISU in any external activities. Finally, ISU argues that even though the allegations made against Forbes were ultimately unsubstantiated, the SFSC considered his possibly inappropriate behavior, among other things, when it decided not to renew Forbes' contract beyond the 2006-07 academic year.

In regard to Hunt's complaint about Forbes in April 2006, ISU officials promptly responded to her allegations. Dr. Major directed Hunt to make a report with the ODAA, and upon following up with Hunt and learning that she had not yet gone, he escorted her to the

ODAA office. The ISU Police became involved and a criminal investigation ensued. After she complained, Hunt did not interact with Forbes other than to the extent necessary to cooperate in the criminal investigation into his alleged misconduct. Though Hunt alleges that Forbes acted inappropriately towards her on a number of occasions throughout 2005 and 2006, Hunt does not dispute that ISU did not know of her allegations until April 29, 2006. At the time ISU did learn of her allegations, Forbes had already been notified that his contract would not be renewed, he had already submitted his resignation, and he was not in a position to effect Hunt's grades.

Hunt argues that ISU's investigations were cursory, if not sham. Hunt supports that contention when it comes to Blakenfeld's 2005 complaint by highlighting the ODAA's failure to uncover a report that Forbes acted inappropriately toward another female student, Meredith Melvin, at the party, and failed to uncover Forbes' harassing conduct toward Hunt at that party. The record proves otherwise, where the ODAA's Investigative Findings detail that Melvin denied that Forbes made an inappropriate comment to her or that any of the quartet members[10] acted inappropriately. Further, nothing appears in the record to suggest that Hunt should have been interviewed because of Forbes' alleged misconduct toward her at the 2005 party.

Hunt notes that a jury could view the information that other witnesses did not see the conduct complained of as supporting a lackluster effort by ISU to investigate the allegations. Hunt additionally notes that where there is evidence in the record that Forbes pressured Hunt to keep matters between them private, a jury could question whether Melvin was likewise pressured not to report Forbes' misconduct, contributing to ISU's inability to substantiate the allegations. The Court agrees with ISU that Hunt's suggestions as to what the jury may question, or how it

---

[10] Forbes was a member of this quartet, a group of men that played instruments together.

15

may view the evidence, calls for speculation. Those suggestions cannot be relied upon to defeat ISU's motion for summary judgment. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact").

Hunt additionally takes issue with the fact that Forbes was never told not to socialize with female students by a superior at ISU and was never restricted in his interaction with female students by a superior at ISU, even though there were multiple accounts of sexually inappropriate conduct by Forbes toward female students.[11] Though ISU may not have restricted Forbes in such a broad manner indefinitely, that does not mean ISU was deliberately indifferent. Indeed, the record shows that ISU's ODAA engaged in extensive formal investigations into Blakenfeld's and Torkelson's 2005 allegations of misconduct by Forbes, and took additional actions to prevent any further misconduct by Forbes, including limiting his interaction with students off-campus. In the context of Torkelson's complaint, given the he said-she said type of situation, it may have been helpful for ISU to have a system in place to enable the ODAA to conduct an evidentiary hearing so that the complainant and respondent would have an opportunity to testify live and be subject to cross-examination. However, that said, the absence of such a system does not amount to deliberate indifference where the ODAA did conduct an extensive formal investigation. In *Davis*, involving student-on-student sexual harassment, the Supreme Court explained that victims cannot make particular remedial demands, and courts

---

[11] As discussed previously, and noted by ISU, it did in fact limit Forbes' interaction with Blakenfeld, a female student, when Dr. Major transferred her from Forbes' instruction in 2002. ISU did also restrict Forbes' ability to represent ISU off-campus pending investigation into Torkelson's allegations.

should refrain from second-guessing disciplinary decisions made by school administrators. 526 U.S. at 648.

At the time Hunt came forward with her allegations, Forbes had already not been reappointed to his position, he had submitted his resignation, and Hunt had no further contact with him except to the extent necessary to cooperate in the criminal investigation. In viewing the evidence in the light most favorable to Hunt, and drawing all reasonable inferences in favor of Hunt, the Court finds that a reasonable jury could not find that ISU was deliberately indifferent to the allegations of Forbes' misconduct. ISU neither decided not to act, nor failed to adequately respond to the students' allegations. *See Delgado*, 367 F.3d at 672; *Gebser*, 524 U.S. at 290. Ultimately, it cannot be said that ISU's response to the students' allegations of misconduct was clearly unreasonable given the circumstances. *See Davis*, 526 U.S. at 648-49.

One additional argument Hunt makes is that because another ISU professor, Dr. Stephen Steele ("Steele"), openly dated one of his students and no disciplinary action was ever taken against him for his violation of university policy, "strong inferences" arise that ISU was deliberately indifferent to faculty sexual conduct with students. ISU argues that Hunt concedes that the relationship was never reported to Dr. Major or other school officials, and that by its very nature a consensual relationship is not evidence of harassing conduct. ISU argues further that even if it did turn a blind eye to a consensual relationship, that does not indicate it would turn a blind eye to a professor harassing a student.

It is questionable whether a consensual relationship between a student and professor gives rise to institutional liability under Title IX. In *Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp.*, the Seventh Circuit considered whether school officials had actual

knowledge of misconduct by the alleged harassing teacher. 551 F.3d at 606. The teacher had married one of his former students, and had previously engaged in a sexual relationship with another student. 551 F.3d at 604. Nothing in the record suggested that the teacher and his wife engaged in a sexual or otherwise improper relationship while she was his student, and school officials had no knowledge of the second relationship until the plaintiff brought her complaint against the teacher and school district's board of trustees *Id.* at 606. The plaintiff admitted that she concealed her relationship with the teacher from school officials. *Id.* The Court held, "Simply knowing that a teacher married a woman formerly his student, without actual knowledge of misconduct, does not suffice to hold a school district liable under Title IX." *Id.* Here, even if such a consensual relationship could make ISU liable, given that ISU officials were not told about Steele's consensual relationship with a student, it could not have been deliberately indifferent in violation of Title IX. Hunt fails to create a genuine issue as to whether ISU was deliberately indifferent, merely by suggesting how a jury could view ISU's investigation into Forbes' misconduct in light of the Steele situation. Again, such a suggestion calls for speculation. *See Amadio,* 238 F.3d at 927.

Ultimately, as there is no genuine issue of material fact as to whether ISU was deliberately indifferent to Forbes' alleged misconduct, ISU's motion for summary judgment is granted. The Court finally notes that it is truly unfortunate that Hunt had to complain about Forbes' conduct in the first place. The Court is not unsympathetic to Hunt's claims, but the facts simply do not rise to the level necessary to make ISU liable under Title IX's stringent deliberate indifference standard.

## CONCLUSION

For the reasons set forth above, Defendant ISU's Motion for Summary Judgment [#34] on Plaintiff Hunt's Title IX claim is GRANTED. Defendant Forbes remains a nominal party in this case, and so Plaintiff Hunt is directed to file a Notice of Dismissal or otherwise take action to proceed against Forbes within seven days of the date of this Order.

ENTERED this 26th day of April, 2010.

                                              s/Michael M. Mihm
                                              Michael M. Mihm
                                              United States District Judge